**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Jim Edd BAKER, Defendant–Appellant.**

**No. 98–6146.**

United States Court of Appeals,
Sixth Circuit.

Argued: Sept. 23, 1999

Decided and Filed: Nov. 23, 1999

**35.** *Hickman,* 329 U.S. at 516, 67 S.Ct. 385 (Jackson, J., concurring).

212

Charles P. Wisdom, Jr., Assistant U.S. Attorney, Kenneth R. Taylor, Assistant U.S. Attorney (argued and briefed), Lexington, Kentucky, for Plaintiff–Appellee.

Donald D. Waggener (argued and briefed), Lexington, Kentucky, for Defendant–Appellant.

Before: KRUPANSKY and NORRIS, Circuit Judges; GWIN, District Judge.*

## OPINION

GWIN, District Judge.

Defendant Jim Baker appeals his conviction and sentence for unlawful possession of a firearm while subject to a domestic violence protection order, in violation of 18 U.S.C. § 922(g)(8). In appealing his conviction, Baker contends that the district court erred in both overruling his constitutional challenge to § 922(g)(8) and refusing to instruct the jury that knowledge of the law is a required element of a § 922(g)(8) offense. Baker also appeals his sentence, arguing that the enhancement of his sentence based on his possession of an assault weapon, rather than an ordinary firearm, unconstitutionally deprives him of equal protection of the laws.

### I. BACKGROUND

Jim Baker has had a history of abusive relationships with women. On three separate occasions Baker's various love interests have obtained orders restraining him from committing acts of domestic violence. The first of these orders was entered in September 1996, at the request of Baker's former girlfriend, Honey Barnes. This order indicated, in bold print, that "it is a federal violation to purchase, receive, or possess a firearm while subject to this order."

Nevertheless, while still subject to the protection order referenced above, Baker purchased an SKS assault rifle in April

---

\* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1997. Baker purchased the rifle from a gun store in Kentucky, while accompanied with his new girlfriend, Kimberly Hughes. Either Hughes or the store clerk checked a box indicating that Baker was qualified to purchase the rifle. Neither Hughes nor the clerk knew of the domestic violence protection order entered against Baker.

Following the rifle purchase, Baker's relationship with Hughes rapidly deteriorated, such that Hughes sought a domestic violence protection order to restrain Baker from threatening her with his assault rifle. A second order was then entered against Baker in May 1997. Like the first order, this order contained language informing Baker of his disqualification from the purchase or possession of firearms.

Near the time of the second order, Baker threatened yet another woman with his assault rifle. This woman, Baker's estranged wife, also sought a domestic violence protection order against Baker, which was entered in June 1997. This order contained the same firearm disability notification as printed on the previous orders.

On June 27, 1997, Baker accidentally shot one of the few persons in this narrative who had not sought protection from his violent behavior Baker himself. The accidental shooting alerted the authorities to Baker's possession of a firearm while subject to multiple domestic violence protection orders. This prosecution commenced thereafter.

On March 5, 1998, Jim Baker was indicted on two criminal charges arising from his purchase and possession of the SKS assault rifle. The first count alleged that Baker violated 18 U.S.C. § 922(g)(8), which makes it unlawful for a person subject to a domestic violence protection order to possess a firearm. The second count alleged that Baker violated 18 U.S.C. § 922(a)(6) by making knowingly false statements to a licensed firearms dealer.

Before trial, Baker filed a motion to dismiss the indictment. In this motion, Baker argued that § 922(g)(8) is unconstitutional on various grounds. Specifically, Baker claimed that the statute (1) violates the procedural and equal protection aspects of the Due Process Clause of the Fifth Amendment; (2) violates the Cruel and Unusual Punishment Clause of the Eighth Amendment; and (3) reflects an impermissible exercise of Congress's power to regulate commerce under the Commerce Clause found in Article I. The district court denied Baker's motion.

Following the denial of his motion to dismiss, Baker requested that the district court instruct the jury that to violate § 922(g)(8), a defendant must know that his conduct was illegal. The district court refused Baker's request.

A jury subsequently convicted Baker on the first count of the indictment, finding that Baker possessed a firearm while subject to a domestic violence protection order. The jury, however, acquitted Baker on the second count of the indictment.

In sentencing Baker, the district court determined Baker's base offense level pursuant to U.S.S.G. § 2K2.1(a)(4)(B). This guideline provides for an offense level increase if the defendant possessed the type of firearm described in 18 U.S.C. § 921(a)(30). The SKS assault rifle Baker possessed fell within the description provided in § 921(a)(30), and thus the district court enhanced Baker's base offense level accordingly. Baker objected to the determination of his base offense level, claiming that the enhancement of his sentence based solely on his possession of an assault weapon constituted an equal protection violation. The district court overruled Baker's objection.

Baker then filed this present appeal. On appeal, Baker raises the same objections to his conviction and sentence outlined above. As discussed below, we find that the district court properly rejected Baker's claims.

## II. DISCUSSION

### A. Constitutionality of § 922(g)(8)

Baker first challenges his conviction by claiming § 922(g)(8) violates the United States Constitution. Again, this statute prohibits individuals subject to domestic violence protection orders from possessing firearms:

It shall be unlawful for any person-

\* \* \* \* \* \*

(8) who is subject to a court order that-

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury ...

\* \* \* \* \* \*

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The district court overruled each of Baker's constitutional claims. We review the district court's determination of the constitutionality of a federal statute *de novo. See United States v. Brown,* 25 F.3d 307, 308 (6th Cir.1994).

#### 1. Due Process Clause

Baker contends that § 922(g)(8) violates the Due Process Clause of the Fifth Amendment in three respects. First, Baker claims that the statute allows for selective prosecution, in violation of the equal protection guarantee implicitly embodied in the Due Process Clause.[1] On its face, § 922(g)(8) neither provides for nor encourages selective prosecution. Thus, we presume Baker is claiming only that his conviction resulted from selective prosecution.

This Court has set forth the three elements of an equal protection claim based on selective prosecution:

First, [the state actor] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Stemler v. City of Florence,* 126 F.3d 856, 873 (6th Cir.1997) (quoting *United States v. Anderson,* 923 F.2d 450, 453 (6th Cir. 1991)).

In proving these elements, Baker must produce "clear evidence" to rebut the

---

1. Unlike the 14th Amendment, which is applicable to the states, the Fifth Amendment, applicable to the federal government, does not explicitly guarantee equal protection of the laws. Yet, noting that the concepts of due process and equal protection both stem from "our American ideal of fairness," the United States Supreme Court has found that the Due Process Clause of the Fifth Amendment encompasses an equal protection guarantee. *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); *see also Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment.").

"strong presumption" that state actors have properly discharged their duties. *Stemler*, 126 F.3d at 873 (citing *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 1487, 134 L.Ed.2d 687 (1996)). However, Baker has failed to present any evidence suggesting that the prosecutor singled him out for prosecution. Instead, Baker offers only the conclusory allegation that his conviction under § 922(g)(8) is somehow tainted by selective prosecution. Without more, we find no merit in Baker's selective prosecution claim.

 Next, Baker argues that § 922(g)(8) deprives him of equal protection of the laws in that it "infringes upon the exercise of a fundamental right and operates to a disadvantage of a suspected class." Exactly what fundamental right or suspect class Baker refers to remains a mystery. Baker has no fundamental right to possess an assault rifle. *See United States v. Warin*, 530 F.2d 103, 106–07 (6th Cir.1976) (finding that Second Amendment does not guarantee a personal right to bear arms). And the United States Supreme Court has yet to recognize as a suspect class individuals subject to domestic violence protection orders.

 Affecting neither a fundamental right nor a suspect class, § 922(g)(8) warrants only rational basis review. This level of review, unlike strict scrutiny, is highly deferential to Congress's judgment in enacting a particular statute. To survive rational basis review, a statute need only be rationally related to a legitimate governmental interest. *See United States v. Brandon*, 158 F.3d 947, 956 (6th Cir.1998).

We believe § 922(g)(8) is rationally related to the government's legitimate interest in curtailing the incidence of domestic violence. The statute reflects Congress's determination that persons subject to domestic violence protection orders pose an increased threat to the safety of their intimate partners and children. Congress concluded that keeping firearms away from such individuals represents a reasonable step toward reducing domestic violence.[2] We find no reason to second-guess this reasonable conclusion.

 Finally, Baker claims that § 922(g)(8) provides insufficient procedural due process. Baker complains that the civil proceeding by which he was made subject to a domestic violence protection order did not afford him the constitutional safeguards associated with a criminal prosecution.[3] Though he acknowledges that civil proceedings generally do not feature such safeguards, Baker argues that because his status as one subject to a domestic violence protection order constituted the basis of a federal criminal prosecution, the proceeding by which he attained that status must consist of the same procedural safeguards as a criminal prosecution.

We disagree. The fact that Baker's status makes him criminally liable for possessing a firearm does not imbue the process by which he attained that status with constitutional significance. Indeed, a legally-relevant status under § 922(g) may arise in the absence of any formal proceeding. For example, § 922(g)(3) prohibits an individual addicted to controlled sub-

---

2. In enacting § 922(g)(8), Congress recognized that domestic violence is a pervasiveness problem in the United States:

 Congress finds with respect to this provision [§ 922(g)(8)] that domestic violence is the leading cause of injury to women in the United States between the ages of 15 and 44; firearms are used by the abuser in 7 percent of domestic violence incidents and produces an adverse effect on interstate commerce; and individuals with a history of domestic abuse should not have easy access to firearms.

H.R. Conf. Rep. No. 103–711, at 391 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1839, 1859.

3. Pursuant to Kentucky law, Baker was made subject to a domestic violence protection order after the state court determined by a preponderance of the evidence that Baker had committed domestic abuse and posed a threat of continued abuse. This determination occurred following a hearing of which Baker was notified. *See* Ky.Rev.Stat. Ann. §§ 403.745, .750 (Michie 1998).

stances from possessing a firearm, yet an individual attains the status of a drug addict without a court proceeding of any kind.

Moreover, even when a particular status arises from a formal proceeding, the nature of that proceeding has no effect on the constitutionality of a § 922(g)(8) prosecution. In *Lewis v. United States*, the United States Supreme Court upheld a defendant's conviction under a law that prohibited convicted felons from possessing firearms, even though the defendant's underlying conviction appeared constitutionally infirm. 445 U.S. 55, 65, 100 S.Ct. 915, 921, 63 L.Ed.2d 198 (1980). The Court recognized that though the defendant may have been unlawfully convicted, the defendant was nevertheless a convicted felon and thus subject to the plain terms of the statute.

The Supreme Court's reasoning in *Lewis* is instructive. Regardless as to how Baker became subject to a domestic violence protection order, he attained that status and thus must comply with § 922(g)(8). A jury, after a criminal trial featuring all required constitutional safeguards, found Baker had failed to do so. Finding that Baker received all the process he was due, we affirm the district court's rejection of Baker's procedural due process claim.

### 2. Cruel and Unusual Punishment

■ Baker alleges that prosecution under § 922(g)(8) constitutes cruel and unusual punishment in violation of the Eighth Amendment. However, Baker fails to offer any argument or cite any authority in support of this claim. We are thus left to presume the exact the nature of Baker's Eighth Amendment challenge.

■ Baker's only plausible Eighth Amendment claim concerns the proportionality of his forty-six-month prison sentence with his culpability in violating § 922(g)(8). Yet, the Cruel and Unusual Punishment Clause encompasses a "nar-

row proportionality principle," such that only extreme sentences that are grossly disproportionate to the crime committed are prohibited. *Harmelin v. Michigan*, 501 U.S. 957, 997, 1001, 111 S.Ct. 2680, 2702, 2705, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). Generally, courts should grant "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983).

In light of the dangers Congress sought to avoid in enacting § 922(g)(8), Baker's forty-six-month prison sentence hardly qualifies as "extreme." We thus affirm the district court's rejection of Baker's Eighth Amendment challenge.

### 3. Commerce Clause

■ Last, Baker asserts that in enacting § 922(g)(8), Congress reached beyond its authority to regulate interstate commerce. Baker provides no substantive argument to support this claim, but instead merely cites to the United States Supreme Court's opinion in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

In *Lopez*, the Court held that a federal law prohibiting firearm possession in a school zone reflected an improper exercise of Congress's authority to regulate commerce. *See id.* at 551, 115 S.Ct. at 1629–34. The Court observed that the Commerce Clause authorizes Congress to constitutionally regulate three broad areas of activity: (1) the use of the channels of interstate commerce; (2) the instrumentalities of, or persons or things in, interstate commerce; and (3) activities substantially affecting interstate commerce. *See id.* at 557–59, 115 S.Ct. at 1629. After concluding the law in question regulated neither the channels nor the instrumentalities of interstate commerce, the Court focused its analysis on whether the law substantially affected interstate commerce. *See id.* at 559–61, 115 S.Ct. at 1630.

The Court then found that the law lacked a substantial connection with interstate commerce. Two observations supported this finding. First, the Court noted that the law "is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic activity, however broadly one might define those terms." *Id.* at 561, 115 S.Ct. at 1630–31. Second, the Court cited the law's lack of a jurisdictional element "which would ensure, through a case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at 561, 115 S.Ct. at 1630.

We believe that § 922(g)(8) need not suffer the same fate as the law at issue in *Lopez.* That law merely prohibited firearm possession in a school zone. Section 922(g)(8), however, forbids individuals subject to domestic violence protection orders "to ship or transport in interstate or foreign commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." With this jurisdictional element, § 922(g)(8) both explicitly relates to commerce and ensures only those activities affecting interstate commerce fall within its scope.

In *United States v. Chesney,* this court relied on the same jurisdictional element in upholding § 922(g)(1) against a Commerce Clause challenge. 86 F.3d 564, 568–570 (6th Cir.1996). The defendant in *Chesney* claimed that § 922(g)(1), which prohibits convicted felons from possessing firearms, lacked a substantial nexus with interstate commerce. This court held otherwise, finding that the jurisdictional element contained in § 922(g) rendered § 922(g)(1) fully consistent with the dictates of *Lopez.*

In accord with our holding in *Chesney,* we find that the jurisdictional element ap-

plicable to § 922(g)(8) insulates the statute from a Commerce Clause challenge.[4] Thus, we affirm the district court's finding that Congress properly exercised its power to regulate commerce in enacting § 922(g)(8).

### B. Jury Instruction

■ Baker next claims that the district court erred in failing to instruct the jury that it could not convict him of violating § 922(g)(8) unless he knew the law forbade him to possess firearms while subject to a domestic violence protection order. According to Baker, § 922(g)(8) is an obscure statute that punishes seemingly innocent conduct. Thus, Baker believes that unless construed to allow an ignorance of the law defense, § 922(g)(8) violates the due process principle requiring that individuals receive fair warning of the potential criminality of their conduct.

■ We review a district court's failure to give a requested jury instruction for abuse of discretion. *See United States v. Frost,* 914 F.2d 756, 764–67 (6th Cir.1990). As explained below, we find that the district court properly refused Baker's requested instruction.

Even those not versed in the law recognize the centuries-old maxim that "ignorance of the law is no excuse." This maxim, deeply embedded in our American legal tradition, reflects a presumption that citizens know the requirements of the law. The benefits of such a presumption are manifest. To allow an ignorance of the law excuse would encourage and reward indifference to the law. Further, the difficulty in proving a defendant's subjective knowledge of the law would hamper criminal prosecutions.

Despite these important benefits, the ignorance maxim is not absolute. The Unit-

---

4. Other circuits have employed similar reasoning in upholding § 922(g)(8) against Commerce Clause challenges. *See United States v. Bostic,* 168 F.3d 718, 722 (4th Cir.1999); *United States v. Cunningham,* 161 F.3d 1343, 1345 (11th Cir.1998); *United States v. Wilson,* 159 F.3d 280, 287 (7th Cir.1998); *United States v. Pierson,* 139 F.3d 501, 503 (5th Cir. 1998).

ed States Supreme Court has abrogated the maxim when faced with a law so technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct.[5] *See Bryan v. United States*, 524 U.S. 184, ————————, 118 S.Ct. 1939, 1946–47, 141 L.Ed.2d 197 (1998) (noting that Court has carved an exception to ignorance maxim with respect to "highly technical statutes that presented the danger of ensnaring individuals engaging in apparently innocent conduct"); *Lambert v. California*, 355 U.S. 225, 229–30, 78 S.Ct. 240, 243–44, 2 L.Ed.2d 228 (1957) (creating exception to ignorance maxim with respect to obscure felon registration statute). To presume knowledge of such a law would violate a core due process principle, namely that citizens are entitled to fair warning that their conduct may be criminal. *See Lambert*, 355 U.S. at 228, 78 S.Ct. at 243; *see also United States v. Wilson*, 159 F.3d 280, 293 (7th Cir.1998) (Posner, J., dissenting) (stating that abrogating ignorance maxim "is the standard device by which the courts avoid having to explore the outer boundaries of the constitutional requirement of fair notice of potential criminal liability").

Some courts have concluded that § 922(g)(8) is an obscure law that penalizes the generally lawful practice of possessing firearms, and thus must allow for an ignorance of the law defense to avoid a conflict with the due process principle of fair warning. See *United States v. Ficke*, 58 F.Supp.2d 1071 (D.Neb.1999); *United States v. Emerson*, 46 F.Supp.2d 598, 613 (N.D.Tex.1999). These courts rely, as Baker does here, on Judge Posner's dissent in *United States v. Wilson.* 159 F.3d at 293–96. The defendant in *Wilson* was convicted of violating § 922(g)(8) despite never receiving any notice of his disqualifi-

cation from possessing firearms. The defendant challenged his conviction on due process grounds. Observing that ignorance of the law is traditionally no excuse to criminal liability, the United States Court of Appeals for the Seventh Circuit affirmed the defendant's conviction. See *id.* at 288–89.

In dissent, Judge Posner described § 922(g)(8) as a "trap" that sprang on the defendant as he engaged in conduct he ought never have suspected was criminal. *Id.* at 293. Because this trap threatened due process principles of notice and fair warning, Judge Posner argued that § 922(g)(8) should be interpreted to require the government to prove that a violator knew he was committing a crime by possessing a firearm. *See id.*

We find that the United States's prosecution of Baker under § 922(g)(8) did not result in a violation of his due process rights, thus we need consider interpreting the statute to recognize ignorance of the law as an excuse. Baker received adequate notice with respect to the requirements of § 922(g)(8). Each of the domestic violence protection orders entered against him featured a bold print warning that he could not lawfully possess firearms. Such warnings were never provided to the defendant in *Wilson*. Indeed, Judge Posner recognized that printed warnings on domestic violence protection orders would cure what he otherwise considered the due process infirmity of a § 922(g)(8) prosecution:

> All the Department of Justice had to do in order to preserve the rule of law was to notify all state courts that have domestic-relations jurisdiction of the existence and terms of 18 U.S.C. § 922(g)(8) and to suggest that every domestic-relations restraining order contain a printed

---

5. The judicial abrogation of the ignorance maxim is not without its critics. Professor Sharon Davies argues that while both the Supreme Court and the lower federal courts have increasingly interpreted statutes to include an ignorance of the law defense, they have failed to articulate a consistent rationale

for so doing. The cavalier manner in which courts have eroded the maxim, according to Professor Davies, threatens both the rule of law and the separation of powers principle. *See* Sharon L. Davies, *The Jurisprudence of Willfulness: . An Evolving Theory of Excusable Ignorance*, 48 Duke L.J. 341 (1998).

warning that the defendant is violating federal criminal law unless he immediately divests himself of any firearms and ammunition that he owns.

*Id.* at 295.[6]

■ Moreover, even had Baker not received direct notice of his firearms disability, his prosecution under § 922(g)(8) would still not have resulted in a violation of his due process rights. The fact that Baker had been made subject to a domestic violence protection order provided him with notice that his conduct was subject to increased government scrutiny. Because it is not reasonable for someone in his position to expect to possess dangerous weapons free from extensive regulation, Baker cannot successfully claim a lack of fair warning with respect to the requirements of § 922(g)(8). *See United States v. Meade,* 175 F.3d 215, 225–226 (1st Cir. 1999) (upholding § 922(g)(8) against due process challenge after finding individual under domestic violence protection order "would not be sanguine about the legal consequences of possessing a firearm"); *United States v. Bostic,* 168 F.3d 718, 722 (4th Cir.1999) (upholding § 922(g)(8) against due process challenge after concluding that "[l]ike a felon, a person [subject to a domestic violence protection order] cannot reasonably expect to be free from regulation when possessing a firearm"); *see also Wilson,* 159 F.3d at 288–89 (upholding § 922(g)(8) against due process challenge); *United States v. Spruill,* 61 F.Supp.2d 587 (W.D.Tex.1999) (same).

Based on the above, we find that the district court properly exercised its discretion in refusing Baker's requested jury instruction.

### C. Constitutionality of U.S.S.G. § 2K2.1(A)(4)(B) and 18 U.S.C. § 922(a)(30)

■ Baker's final argument on appeal concerns the constitutionality of his sentence. Baker contends that by in effect enhancing his sentence simply because he possessed an assault weapon rather than an ordinary firearm, U.S.S.G. § 2K2.1(A)(4)(B) and 18 U.S.C. § 921(a)(30) denied him equal protection of the laws.

The district court overruled Baker's objection to his sentence. We review the district court's decision regarding the constitutionality of a federal statute *de novo. See United States v. Brown,* 25 F.3d 307, 308 (6th Cir.1994).

■ Because the provisions challenged by Baker neither affect a fundamental right nor a suspect class, we need only determine whether the provisions have a rational relationship to a legitimate governmental interest. *See supra,* Part II. A.1. Baker bears the burden of proving that the provisions lack such a rational relationship. This burden requires Baker to negate "every conceivable basis that might support" the provisions. *See Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973).

We find Congress's decision to deal more harshly with § 922(g)(8) offenders who possess assault weapons rather than ordinary firearms has a rational relationship to the government's interest in reducing domestic violence. Individuals with a history of domestic violence may very well pose a greater threat to their intimate partners and children when armed with an assault rifle as opposed to a firearm capable of less immediate destruction. Because Congress had a conceivable basis for adopting the provisions in question, we affirm the district court's decision to overrule Baker's equal protection claim.

### III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's decision to over-

---

**6.** Baker's claim that, despite the printed warnings, he remained ignorant of his disqualification from owning firearms is of no moment. The protection orders provided Baker with fair warning that he would violate federal law by possessing a firearm. Due process requires nothing more.

rule Baker's various challenges to his conviction and sentence. Footnotes