**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clyde W. HAIRE Defendant–Appellant.**

No. 02–2162.

United States Court of Appeals,
Sixth Circuit.

March 2, 2004.

James A. Brunson, Asst. U.S. Attorney, U.S. Attorney's Office, Bay City, MI, for Plaintiff–Appellee.

Robert J. Dunn, Bay City, MI, for Defendant–Appellant.

Before NELSON, GILMAN, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

Haire was charged in a two-count indictment in the Eastern District of Michigan, Northern Division. The first count charged Haire with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(e)(1). The second count charged Haire with possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). The case was tried to a jury. Haire was convicted on both counts and was sentenced to concurrent terms of 327 months of imprisonment on count 1 and sixty months of imprisonment on count 2, concurrent three-year terms of supervised release, and a special assessment of $100 on each count. Haire appeals both his conviction and his sentence on count 1. Haire challenges his conviction on four grounds: (1) that his conviction violates the Ex Post Facto Clause of the United States Constitution; (2) that he was deprived of due process because he lacked sufficient notice that it was illegal for him to possess a gun; (3) that 18 U.S.C. § 922(g) is unconstitutional as applied to him because his conduct was insufficiently related to interstate

commerce to permit federal regulation; and (4) that the district court erred in refusing to instruct the jury on his proposed entrapment-by-estoppel defense. Haire also challenges his sentence as so grossly disproportionate to his offenses that it violates his right under the Eighth Amendment to be free of cruel and unusual punishment. Because neither Haire's conviction nor his sentence violates his constitutional rights and Haire was not entitled, on the facts of the case, to the entrapment-by-estoppel defense, we affirm.

The facts of the case are not in dispute. Prior to his instant conviction, Haire was convicted of multiple violent crimes in Colorado and sentenced to a term of imprisonment. Haire was paroled on September 2, 1986, and moved to Michigan in February of 1990. A series of events, not directly relevant here,[1] led Haire to consent to a search of his bedroom and the storage area of the house in which he lived. During the search, troopers discovered an unloaded .22 caliber bolt action rifle and a loaded .22 caliber semi-automatic pistol. The serial number on the pistol had been obliterated and the weapon was later determined to have been reported stolen. Haire's possession of those weapons formed the basis of his convictions.

Haire was convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Violations of 18 U.S.C. § 922 typically are punishable by imprisonment for a maximum of ten years. 18 U.S.C. § 924(a)(2).[2] Haire's prior convictions, however, brought him under the ambit of 18 U.S.C. § 924(e)(1), which provides for a minimum sentence of fifteen years, but specifies no maximum sentence. United States Sentencing Guideline ("U.S.S.G.") 4B1.4 governs sentencing for persons, like Haire, who are subject to enhanced penalties under 18 U.S.C. § 924(e). Because Haire admitted that he had the pistol in his possession with him when he committed a sexual assault in Flint, Michigan,[3] U.S.S.G. 4B1.4(b)(3)(A) provides that his base offense level be set at 34.[4] With an offense level of 34 and his criminal history category of VI, Haire's guideline range was 262–327 months of imprisonment. Haire was sentenced to imprisonment for 327 months.

### A. Haire's conviction under 18 U.S.C. §§ 922(g)(1) & 924(e)(1) does not violate the Ex Post Facto Clause of the United States Constitution.

■ Haire's conviction does not violate the Ex Post Facto Clause, because the

---

1. Haire came to the attention of the Michigan state police during an investigation into a series of sexual assaults on prostitutes in the Flint, Michigan area.

2. The relevant statutes and sentencing guidelines also permit the imposition of fines, but fines are not at issue in this case.

3. According to the PSR, Haire admitted that he played "a game" with prostitutes, which involved picking up prostitutes. Haire would negotiate a price for sexual acts, but when the victim entered the sleeping berth of his semi-truck, Haire would show the victim a weapon to place her in fear and advise her that he would hurt her unless she cooperated. J.A. at 338.

4. Uncharged conduct can provide a basis for the application of U.S.S.G. 4B1.4(b)(3)(A), so long as the government proves the conduct occurred by a preponderance of the evidence. *See United States v. Pluta*, 144 F.3d 968, 977 (6th Cir.1998); *United States v. Rutledge*, 33 F.3d 671, 674 (6th Cir.1994). It appears that the district court did find that the government established by a preponderance of the evidence that Haire did commit the sexual assaults, although the court's remarks are somewhat equivocal. J.A. at 325–327. In any event, Haire does not challenge the computation of his base offense level on appeal.

statutes under which he was convicted all pre-date Haire's offense conduct.[5] The exact nature of Haire's ex post facto claim is unclear. Haire appears to claim that a change in Colorado law affecting his ability as an ex-felon to possess guns presents an ex post facto problem because he lacked notice of the change. *See* Appellant's Br. at 11–12 ("[Appellant] also argued that the change in Colorado law amounted to an *Ex Post Facto* application of the Federal felon in possession of a firearm statute and a violation of substantive due process under the Fifth Amendment since he had no reasonable way of knowing his conduct in possessing a firearm in 2001 could be criminal.") At bottom, however, the Ex Post Facto Clause is implicated when a law applies to an event occurring before its enactment and the law disadvantages the offender affected by it. *United States v. Reese,* 71 F.3d 582, 585 (6th Cir.1995). Haire does not dispute that the key event here—his possession of the guns—occurred after the enactment of the laws about which he complains.

Haire was convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), which provides that it is unlawful for any person "who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." If, however, Haire's right to possess firearms had been restored under Colorado law, Haire would not be subject to prosecution under § 922(g). *See* 18 U.S.C. § 921(a)(20) (providing, in part, that "crime punishable by imprisonment for a term exceeding one year" shall be defined by law of the state of conviction, and excluding convictions for which a person's civil rights have been restored, unless the restoration expressly prohibits person from shipping, transporting, possessing, or receiving firearms).

At the time of Haire's prior conviction and of his release from prison, Colorado law provided that violent felons could not possess firearms for ten years from the date of their release from incarceration. C.R.S.A. § 18–12–108 (1986). Accordingly, absent a change in Colorado law, Haire's right to possess firearms would have been restored in September of 1996. Haire's right to possess firearms was not restored, however, because, in 1994, Colorado revised its felon-in-possession laws to bar persons convicted of felonies from ever possessing firearms. C.R.S.A. § 18–12–108 (1994).[6] Thus, Haire was prohibited from possessing firearms long before he

---

**5.** Whether Haire's conviction violates the Ex Post Facto Clause is a question of law, to be reviewed de novo. *United States v. Ristovski,* 312 F.3d 206, 210 (6th Cir.2002), *cert. denied,* — U.S. ——, 123 S.Ct. 1804, 155 L.Ed.2d 669 (2003).

**6.** Haire appears to disclaim any argument that the post-offense change in Colorado law imposing a permanent rather than a temporary disability on his right to possess firearms by itself implicates the Ex Post Facto Clause. *See* Appellant's Br. at 16 ("Appellant does not argue now that the mere change in Colorado law in 1994 by itself constitutes an unconsti-

tutional *Ex Post Facto* Law which should result in the vacation of Count I of his Indictment. What Appellant does argue is that his due process rights were violated since there was no way for him to know....."). In any case, such an argument was viewed with skepticism by this court in *United States v. Campbell,* 256 F.3d 381 (6th Cir.2001) (finding the argument persuasive that the Ex Post Facto Clause is not violated when a law passed after offense conduct imposes a disability on felon's right to own firearms), although the court resolved that case on other grounds.

possessed of the guns in 2001, and his lack of knowledge of existing Colorado and federal law does not raise ex post facto concerns.

### B. Haire's convictions did not violate his right to due process.

■ Moreover, Haire's purported ignorance of the fact that it was illegal for him to possess guns does not constitute a due process violation.[7] Haire recognizes the longstanding maxim that "ignorance of the law is no excuse." *See United States v. Baker,* 197 F.3d 211, 218 (6th Cir.1999). "This maxim, deeply embedded in our American legal tradition, reflects a presumption that citizens know the requirements of the law." *Id.* Haire argues that, on "the unique facts" of this case, the maxim does not apply, because it would be unreasonable to expect that he would follow changes in Colorado law after moving to Michigan and because the relevant Colorado law is so vague and confusing that it would be unreasonable to expect him to understand it.

Haire cites no authority for the proposition that his move from Colorado to Michigan excuses his ignorance of the applicable developments in Colorado law. Haire knew or should have known that, as a felon, his right to possess firearms could be restricted. *Cf. Baker,* 197 F.3d at 220 (finding that fact that defendant "had been made subject to a domestic violence protection order provided him with notice that his conduct was subject to increased government scrutiny [and it was] not reasonable for someone in his position to expect to possess dangerous weapons free from extensive regulation...."). As noted above, § 922(g) looks to the law in the state of conviction to determine whether a

felon is prohibited from possessing guns. Accordingly, it would not be reasonable for Haire to claim that he did not know that Colorado controlled whether he could possess a gun or for the court to excuse Haire from consulting Colorado law before deciding to possess a gun.

Haire's contentions that the relevant Colorado law is unconstitutionally vague and that, therefore, he lacked notice that it was illegal for him to possess guns, is without merit. While it is true that courts sometimes have not applied the maxim that ignorance of the law provides no defense when confronting statutes that are so technical or obscure as to risk ensnaring individuals engaged in apparently innocent conduct, *Baker,* 197 F.3d at 219 (citing *Bryan v. United States,* 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) and *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957)), the Colorado statute at issue here clearly prohibits felons from possessing firearms. C.R.S.A. § 18–12–108(1) reads as follows:

> A person commits the crime of possession of a weapon by a previous offender if the person knowingly possesses, uses, or carries upon his or her person a firearm as described in section 18–1–901(3)(h) or any other weapon that is subject to the provisions of this article subsequent to the person's conviction for a felony, or subsequent to the person's conviction for attempt or conspiracy to commit a felony, under Colorado or any other state's law or under federal law.

While later sections of the statute do continue to refer to a ten-year period running from the date of release from incarceration, that reference only affects what class of felony a prohibited person commits

---

**7.** Whether Haire's convictions resulted in a due process violation is also a question of law, to be reviewed de novo.

when he possesses a firearm in violation of C.R.S.A. § 18–12–108(1). *See* C.R.S.A. § 18–12–108(2)(c) (providing that a violation of C.R.S.A. § 18–12–108(1) is a class 5 felony—rather than a class 6 felony, C.R.S.A. § 18–12–108(2)(a)—if person possesses a weapon within ten years of conviction or release from incarceration for certain specified felonies). By its terms, C.R.S.A § 18–12–108 clearly states that a felon who possesses a firearm commits a felony. Accordingly, Haire had adequate notice that he was prohibited from possessing firearms under Colorado law.

**C. The district court did not err in refusing to instruct the jury that Haire's possession of the guns must have had a recent effect on interstate commerce.**

■ The district court correctly refused to instruct the jury that, in order to convict, they must find that the firearms possessed by Haire had "recently" moved in interstate commerce, as the proposed instruction was not a correct statement of the law.[8] Haire claims that the district court erred in refusing to instruct the jury that it must find that Haire's possession of the guns had a recent effect on commerce for two reasons. First, the language of 18 U.S.C. § 922(g) does not require that Haire's possession have a recent effect on interstate commerce. Second, Congress has the power under the Commerce Clause to regulate Haire's possession of guns, despite the absence of a finding that his gun possession had a recent effect on commerce.

18 U.S.C. § 922(g) provides, in relevant part, as follows:

It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Haire argues that the language "possess in or affecting commerce" implies that his gun possession must have had a recent effect on commerce to constitute a violation of § 922(g). Had Congress intended to punish his possession of a gun that had *ever* moved in interstate commerce, he contends, it could have defined the possession element as it did the ship or transport element – it could have prohibited the possession of "any firearm … which has been shipped or transported in interstate or foreign commerce." Accordingly, Haire argues that the court should give effect to Congress's actual language, and require that his possession of the gun have a recent effect on commerce.

Haire advances no support for his contention that Congress intended to impose any such limitation. Indeed, such a limitation would be nonsensical. A felon who purchased or otherwise received a gun in interstate commerce would be in violation of § 922(g)(1) for a limited period of time—so long as the gun's effect on commerce was "recent"—but his possession of the gun would morph into conduct that does not violate § 922(g)(1) once he has held onto it long enough. There is no

---

8. While we review a district court's failure to give a requested jury instruction for abuse of discretion, *United States v. Baker,* 197 F.3d 211, 218 (6th Cir.1999), a trial court's refusal to give a requested jury instruction is reversible error only if, at minimum, the requested instruction is a correct statement of the law. *See United States v. Sassak,* 881 F.2d 276, 279 (6th Cir.1989). That, of course, is a legal issue for us to examine de novo.

indication that Congress intended a felon's unlawful possession of a handgun to become lawful simply because the felon had managed to possess it unlawfully for a requisite period of time.

Congress's power to criminalize the possession of firearms, moreover, is not limited to instances where the possession has a recent effect on interstate commerce. Haire's argument that 18 U.S.C. § 922(g) is unconstitutional relies on the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), which held that the Commerce Clause did not permit Congress to regulate possession of guns in schools absent a connection to commercial activity, and *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), which held that the Commerce Clause did not permit Congress to regulate non-economic, violent criminal conduct based solely on the conduct's aggregate effect on interstate commerce. In both cases, the Court's constitutional analysis relied on the absence of a statutory jurisdictional element establishing that the federal cause of action is in pursuance of Congress's regulation of interstate commerce. *See Morrison*, 529 U.S. at 611–12; *Lopez*, 514 U.S. at 561–62. Here, of course, there is such an element.

Furthermore, in *United States v. Chesney*, 86 F.3d 564 (6th Cir.1996)—a post-*Lopez* decision—a panel of this court rejected a Commerce Clause challenge to 18 U.S.C. § 922(g).[9] *Chesney*, 86 F.3d at 567–71. Not only did the court find that 18 U.S.C. § 922(g) was facially constitutional, but it also found that it was constitutional when applied to a defendant whose possession of a gun was connected to interstate commerce only by the fact that the gun had previously moved in interstate commerce. *See id.* at 570–71 We explained that "*Lopez* did not disturb the Supreme Court's precedents which indicate that a firearm that has been transported *at any time* in interstate commerce has a sufficient effect on interstate commerce to allow Congress to regulate the possession of that firearm pursuant to its Commerce Clause powers." *Id.* (emphasis added). Accordingly, Haire's proposed jury instruction requiring that the jury determine whether Haire's possession of the guns had a recent effect on commerce did not accurately reflect the law, and the district court did not err by refusing to give it.

**D. The district court did not err in refusing to instruct the jury on Haire's proposed entrapment-by-estoppel defense.**

■ The district court correctly refused to instruct the jury on an entrapment-by-estoppel defense because, as a matter of law, Haire could not establish the required elements of that defense. The defense of entrapment-by-estoppel arises if a government informs a defendant that the charged criminal act was legal, the defendant relied on that information, the defendant's reliance was reasonable, and, given the defendant's reliance, prosecuting him would be unfair. *United States v. Levin*, 973 F.2d 463, 468 (6th Cir.1992). In order to assert the defense against a federal criminal prosecution, however, the representation that the conduct was legal must have been made by a federal official. *United States v. Ormsby*, 252 F.3d 844, 851 (6th Cir. 2001). Haire claims that he relied on rep-

---

9. In his brief, Haire asserts that *Lopez* overruled *Chesney*, but *Chesney* was decided after *Lopez* and the *Chesney* court recognized and applied the *Lopez* decision in determining that 18 U.S.C. § 922(g) was within the scope of Congressional power under the Commerce Clause.

resentations by Michigan State Police Troopers—state, not federal officials—that he was permitted to own guns. Accordingly, even assuming that the troopers made such statements, Haire was not entitled to an entrapment-by-estoppel instruction.

### E. The sentence Haire received under the "Armed Career Criminal" provisions of the Sentencing Guidelines did not violate the Eighth Amendment bar on cruel and unusual punishment.

■ Haire's claim that his sentence of 327 months is grossly disproportionate to the crimes that he committed, such that it constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution, is also without merit.[10] "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California,* 538 U.S. 11, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (plurality opinion) (quoting *Harmelin v. Michigan,* 501 U.S. 957, 996–997, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring)). The Eighth Amendment, however, does not mandate strict proportionality between crime and sentence; instead, at most, only sentences that are "grossly disproportionate" to the crime are prohibited. *Harmelin,* 501 U.S. at 1001. (Kennedy, J., concurring)

Haire was sentenced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) and U.S.S.G. 4B1.4, which provide for stiffer sentences for defendants convicted under 18 U.S.C. § 922(g) if they have three or more previous convictions for violent felonies or serious drug offenses. Haire does not dispute that he

qualifies for an enhanced sentence under 18 U.S.C. § 924(e) and U.S.S.G. 4B1.4; instead, he argues that his sentence under those provisions is disproportionate to his crimes. Haire argues that his sentence is disproportionate when compared to the potential penalty for his actions under state law and when compared to potential federal sentences for other crimes.

As an initial matter, this circuit has already determined that sentences imposed under the ACCA are not so grossly disproportionate as to violate the Eighth Amendment's prohibition on cruel and unusual punishment. *See United States v. Warren,* 973 F.2d 1304, 1311 (6th Cir.1992). The continued validity of that holding is bolstered by the recent decision in *Ewing v. California,* 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), in which the Supreme Court upheld California's "three strikes" law against an Eighth Amendment challenge.

There is no merit to Haire's argument that his sentence is grossly disproportionate to his crime simply because it is significantly greater than a sentence he would receive for the same conduct in state court. This Court summarily rejected a similar claim in *United States v. Warren,* 973 F.2d 1304 (6th Cir.1992), in which the defendant argued that his fifteen-year federal sentence under the ACCA was grossly disproportionate when compared to state law provisions which would have called for a sentence of only one to five years of imprisonment. *Id.* at 1311.

Haire's second argument that his sentence is grossly disproportionate to his crime is that, under a different guideline provision, he would receive a lesser sentence had he committed a different crime. Essentially, Haire argues that he could

---

**10.** We review de novo a constitutional challenge to a criminal defendant's sentence.

*United States v. Tarwater,* 308 F.3d 494, 517 (6th Cir.2002).

have committed a violent crime without a gun and received a lesser sentence under the guidelines than he received for simply possessing a gun. Even assuming that such a disparity could implicate Eighth Amendment concerns, Haire's argument glosses over a few important points— namely he ignores enhancements that elevated his crime above the mere possession of guns. Haire's base offense level was 24. He received a two-level enhancement for possessing a firearm with an obliterated serial number under U.S.S.G 2K2.1(b)(4) and a four-level increase for using or possessing a firearm in connection with another felony offense[11] under U.S.S.G 2K2.1(b)(5), bringing the total offense level to 30. J.A. at 339. His offense level was increased to a minimum of 34 under U.S.S.G 4B1.4(b) because Haire was an "armed career criminal" who used or possessed the gun in connection with a crime of violence. J.A. at 340. On these facts, Haire cannot be heard to complain that he is being harshly penalized for the mere possession of a gun.

In conclusion, as Haire has failed to demonstrate a violation of his rights, we AFFIRM the judgment of the district court.

---

**11.** This enhancement appears to be based on the sexual assault discussed above and at J.A. 338.