**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alphonse GILES, Defendant-Appellant.**

**No. 80–3584**

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Unit A

March 23, 1981.

---

John E. Unsworth, Jr., New Orleans, La. (Court-appointed), for defendant-appellant.

Robert J. Boitmann, W. Glenn Burns, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before GEE, RUBIN and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Defendant-Appellant Alphonse Giles challenges the constitutionality of the federal statute under which he was convicted in the court below—18 U.S.C. § 922(h)(1) (1976). Because we find no merit in either of Giles' asserted grounds for the statute's unconstitutionality, we affirm his conviction.

## I.  FACTUAL BACKGROUND LEADING TO THIS APPEAL

On June 22, 1977, Giles pleaded guilty in Louisiana state court to charges of theft of property valued at over $500—a felony violation of section 67 of the Louisiana Criminal Code, La.Rev.Stat.Ann. § 14:67 (West 1974).  The theft consisted of the forgery of a company check.  For this nonviolent crime, Giles was sentenced to, and served, three years in the Tangipahoa Parish Prison, with credit for the time he had already served.

On June 8, 1979, Giles purchased a .32-caliber semi-automatic pistol from Thompson Sporting Goods in Amite, Louisiana, a licensed dealer in firearms.  On November 28, 1979, he purchased a twelve-gauge shotgun from the same dealer.  Both guns were stipulated to have traveled in interstate commerce.  On both occasions, Giles filled out and signed a Bureau of Alcohol, Tobacco and Firearms Form 4473 which included the following question:

> Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (Note: The actual sentence given by the judge does not matter—a yes answer is necessary if the judge could have given a sentence of more than one year.  Also, a "yes" answer is required if a conviction has been discharged, set aside, or dismissed pursuant to an expungement or rehabilitation statute.)

Giles answered "no" to this question on both forms.

On April 24, 1980, Giles was indicted by a federal grand jury on two counts of unlawful receipt of a firearm by a person who had been convicted of a crime punishable by imprisonment for more than one year, a violation of 18 U.S.C. § 922(h)(1) (1976).[1] He was also indicted on two counts of making false statements to a licensed firearm dealer in connection with the acquisition of a firearm, a violation of 18 U.S.C. § 922(a)(6) (1976).[2] Giles pleaded not guilty to all counts on May 2, 1980, and waived his right to a jury trial.

At his trial before the court on June 9, 1980, Giles admitted purchasing both guns. He testified that he wanted the guns for self-protection as he traveled to and from work. Although he had no specific recollection of filling out the forms, he admitted signing them. Giles contended that he did not understand the question regarding past convictions to be applicable to him because his only past imprisonment had been in his hometown jail. He testified that he did not know that it was unlawful for him to own a gun, and that on previous occasions one of the guns had been taken from him by the local police, but subsequently returned to him. Though he had had little education and could read only with difficulty, on cross-examination he read aloud the question on the Form 4473 regarding prior convictions.

Based on this testimony, Giles was acquitted on the two counts of making false statements to a licensed firearm dealer in connection with the acquisition of a firearm. He was found guilty, however, of both counts under section 922(h)(1). Giles was sentenced to 18 months on each count, to run consecutively.

Through his court-appointed appellate counsel, who also served as his trial counsel,

1. Section 922(h) provides, in pertinent part, as follows:

> It shall be unlawful for any person—
> (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> .    .    .    .
>
> to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(h) (1976).

The avoidance of the term "felony" was apparently intentional, although the definition used in § 922(h)(1)—"crime punishable by imprisonment for a term exceeding one year"—is the definition of "felony" as that term is generally applied to crimes under federal law. *See* H.Rep. No. 1202, 87th Cong., 1st Sess. (1961), *reprinted at* [1961] U.S. Code Cong. & Ad. News 3067, 3067–68. See also note 4 *infra*.

Another statute, 18 U.S.C. App. § 1202(a)(1) (1976), overlaps substantially with § 922(h)(1) in the conduct it proscribes. Section 1202(a) provides, in pertinent part, that "[a]ny person who . . . has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce and affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both." "Felony" is defined in 18 U.S.C. App. § 1202(c)(2) (1976) as "any offense punishable by imprisonment for a term exceeding one year, but does not include any offense (other than one involving a firearm or explosive) classified as a misdemeanor under the laws of a State and punishable by a term of imprisonment of two years or less." Sections 922(h)(1) and 1202(a)(1) were enacted simultaneously by different titles of the Omnibus Crime Control and Safe Streets Act of 1968, see note 4 *infra*; yet the government has the discretion to prosecute under either, regardless of which one allows a harsher sentence. *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *United States v. Thrasher*, 569 F.2d 894, 895 (5th Cir.), *cert. denied*, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 137 (1978).

In the remainder of this opinion, we shall sometimes refer to crimes within the scope of § 922(h)—*i. e.*, those crimes punishable by imprisonment for a term exceeding one year—as "serious crimes," rather than using the term "felony."

2. Section 922(a) provides, in pertinent part, as follows:

> It shall be unlawful—
>
> .    .    .    .
>
> (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a . . . licensed dealer . . . knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

18 U.S.C. § 922(a) (1976).

Giles advances two arguments that section 922(h)(1) is unconstitutional as applied to him. The first is that section 922(h)(1) violates the equal protection guarantee implicit[3] in the due process clause of the Fifth Amendment because it fails to distinguish between persons whose prior convictions were for serious crimes involving violence and persons whose prior convictions were for serious crimes not involving violence. The second argument is that section 922(h)(1) violates the due process clause of the Fifth Amendment because it fails to provide adequate notice of the conduct it proscribes. We address each of these arguments in turn.

## II. EQUAL PROTECTION AND THE FAILURE TO DISTINGUISH BETWEEN VIOLENT AND NONVIOLENT PRIOR SERIOUS CRIMES

Giles draws his first argument from the Supreme Court's language in *Huddleston v. United States,* 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974):

When Congress enacted the provisions under which [Huddleston] was convicted [section 922(a)(6)], it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest.... Congress determined that the ease with which firearms could be obtained contributed significantly to the *prevalence of lawlessness* and *violent crime* in the United States. S.Rep. No. 1097, 90th Cong., 2d Sess., 108 (1968). The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping "firearms out of the hands of those not legally entitled to possess them because of age, *criminal background,* or incompetency." S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968).

*Id.* at 824, 94 S.Ct. at 1268 (emphasis added).

We assume, without deciding, that Giles is correct in his contention that Congress' ultimate goal in enacting section 922(h)(1) was not to prevent possession of firearms by those convicted of nonviolent crimes, but instead to prevent additional lawlessness and violent crime that flows from the widespread availability of firearms. Prohibiting receipt of firearms by those who have in the past been convicted of serious crimes is but a means to promote that ultimate goal. The rationale supporting the use of this means to promote Congress' ultimate goal is this: persons who have been convicted of serious crimes in the past have demonstrated a greater potential for abuse of their right to possess firearms. Prohibiting such persons from possessing firearms can serve as a prophylactic measure to prevent violent crimes and lawlessness.

The predecessor statute to section 922(h)(1) was limited in its sweep to those persons who had been convicted of a "crime of violence"; the current version of section 922(h)(1), however, is undoubtedly both broader in its sweep and more precise in its definitions.[4] In effect, Congress substitut-

---

3. *See, e. g., Lewis v. United States,* 445 U.S. 55, 65, 100 S.Ct. 915, 921, 63 L.Ed.2d 198 (1980); *United States v. Craven,* 478 F.2d 1329, 1338 (6th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973); *United States v. Thoresen,* 428 F.2d 654, 658 (9th Cir. 1970); and the Supreme Court cases cited in each.

4. Section 922(h) had its genesis in § 2(f) of the Federal Firearms Act, ch. 850, 52 Stat. 1250, 1251 (1938) (formerly codified at 15 U.S.C. § 902 (f)), which provided, in pertinent part, as follows:

It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive [*sic*] from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce ....

In 1961, § 2(f) was amended to substitute the phrase "crime punishable by imprisonment for a term exceeding one year" for the phrase "crime of violence." Act of Oct. 3, 1961, Pub.L. No. 87–342, § 2, 75 Stat. 757, *reprinted at* [1961] U.S. Code Cong. & Ad. News 848. The legislative history of the 1961 amendment makes clear that Congress intended for the broader language to aid the federal government in assisting local authorities in the "common assault against crime" by "mak[ing] it more difficult for the *criminal elements of our society* to obtain firearms." H.Rep. No. 1202, 87th Cong., 1st Sess. (1961), *reprinted at* [1961] U.S. Code Cong. & Ad. News 3067, 3068 (emphasis

ed a broader, more precise quantitative standard (conviction of a crime, violent or otherwise, that is punishable by imprisonment for more than one year) for a narrower, somewhat imprecise qualitative standard (conviction of a "crime of violence").[5] By consciously broadening the classes of persons prohibited from receiving firearms, Congress broadened the means by which it hoped to promote its ultimate goal of preventing lawlessness and violent crimes.

Giles contends, however, that the broader sweep of section 922(h)(1) does not rationally further that ultimate goal. In effect, he argues that it is irrational for Congress to presume that those persons who have been convicted of a serious nonviolent crime are more likely than the ordinary citizen to engage in violent crimes involving firearms in the future.

Unfortunately for Giles, however, our response to this argument is largely dictated by the test under which the constitutionality of this type of legislation is reviewed. We agree with the following discussion from a Sixth Circuit case construing this identical section:

It is now well settled that when legislative classifications affect fundamental rights a closer scrutiny of them is required and an overriding or compelling interest must appear to support the legislative classifications.... However, in dealing with social or economic legislation where fundamental rights are not involved a greater latitude is afforded legislative classifications and a statutory classification will not be set aside if a rational basis exists to sustain it....

In *United States v. Thoresen*, 428 F.2d 654 (9th Cir. 1970), an opinion with which we fully agree, the Ninth Circuit determined that shipping or transporting firearms in interstate or foreign commerce under the now repealed 15 U.S.C. § 902(e) was not a basic or fundamental right. Although 18 U.S.C. § 922(h)(1) does not proscribe shipping or transporting firearms (*see* 18 U.S.C. § 922(g)) but instead prohibits receiving firearms in interstate commerce, it follows, a fortiori, from the *Thoresen* holding that receiving firearms shipped in interstate commerce is not a basic constitutional right. Therefore, 18 U.S.C. § 922(h)(1) must be upheld if the classification scheme has any rational basis to support it.

*United States v. Craven*, 478 F.2d 1329, 1338–39 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973). To prevail, Giles must demonstrate that there is no rational relationship between a prohi-

---

added). *See United States v. Weatherford*, 471 F.2d 47, 51–52 (7th Cir. 1972) (discussing legislative intent behind broader language), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2144, 36 L.Ed.2d 695 (1973).

The Federal Firearms Act, including § 2(f), was repealed by the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, § 906, 82 Stat. 197, 234, *reprinted at* [1968] U.S. Code Cong. & Ad. News 237, 281. In its place, the Omnibus Act provided the following:

It shall be unlawful for any person who is under indictment or who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, or is a fugitive from justice, to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Pub.L. No. 90–351, § 902, 82 Stat. 197, 231, *reprinted at* [1968] U.S. Code Cong. & Ad. News 237, 277. This version was formerly codified at 18 U.S.C. § 922(f).

Later that year, the Omnibus Act was amended by the Gun Control Act of 1968, Pub.L. No. 90–618, § 102, 82 Stat. 1213, 1220–21, *reprinted at* [1968] U.S. Code Cong. & Ad. News 1397, 1405. The amendments in the Gun Control Act added certain drug users and mental incompetents to the classes of persons who are prohibited from receiving a firearm. *See* Conf.Rep. No. 1956, 90th Cong., 2d Sess. (1968), *reprinted at* [1968] U.S. Code Cong. & Ad. News 4426, 4429–30. The amendments also redesignated former subsection 922(f) as 922(h), and placed the provision dealing with the receipt of a firearm by a person convicted of a serious crime in a sub-subsection, 922(h)(1). This is the current version, which is codified at 18 U.S.C. § 922(h)(1) (1976); see note 1 *supra*.

5. In one sense, the new standard is narrower, for the old "crime of violence" standard included no quantitative requirement whatsoever. That is, even a violent crime punishable by *less* than one year's imprisonment was reached by the old standard.

bition on the receipt of firearms by persons convicted of serious nonviolent crimes and the reduction of lawlessness and violent crime.[6]

■ To state Giles' argument under the appropriate test is very nearly to refute that argument. We note that three of our sister circuits have rejected identical or substantially similar attacks on section 922(h)(1). The Seventh Circuit has described section 922(h)(1) as "both reasonable and practical" in rejecting an argument identical to that made by Giles. *United States v. Weatherford*, 471 F.2d 47, 52 & n.6 (7th Cir. 1972), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2144, 36 L.Ed.2d 695 (1973). In *Cody v. United States*, 460 F.2d 34, 36 n.3 (8th Cir.), *cert. denied*, 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972), the Eighth Circuit rejected an argument identical to Giles' in upholding a conviction under section 922(a)(6) for making a false statement—specifically, that the defendant had not been convicted of a crime punishable by imprisonment for more than one year—in connection with the purchase of a firearm. And the Sixth Circuit has recognized the rationality of section 922(h)(1) as it applies even to those who have merely been indicted for, but not yet convicted of, a serious crime. *United States v. Craven*, 478 F.2d 1329, 1339 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973).[7]

Other courts have rejected arguments comparable to Giles' in determining the constitutionality of similar firearms control legislation. The Supreme Court has held that 18 U.S.C. App. section 1202(a)(1) (1976), which proscribes conduct almost identical to that proscribed by section 922(h)(1),[8] "clearly meets" the rational relationship test. *Lewis v. United States*, 445 U.S. 55, 66, 100 S.Ct. 915, 922, 63 L.Ed.2d 198 (1980). In *United States v. Harris*, 537 F.2d 563 (1st Cir. 1976), a defendant whose prior conviction was for a nonviolent felony challenged the constitutionality of 18 U.S.C. § 1202(c)(2) (1976), which defines "felon" for purposes of convictions under section 1202(a)(1) in such a manner as to include very nearly the same class of persons reached by section 922(h)(1). The First Circuit rejected the defendant's claim that the failure to distinguish between violent and nonviolent prior felonies denied him equal protection, noting that " 'proof of an inescapable relationship between past and future conduct is not requisite.' " *Id.* at 565–66 (quoting *Reddy v. United States*, 403 F.2d 26, 27 n.1 (1st Cir. 1968), *cert. denied*, 393 U.S. 1085, 89 S.Ct. 871, 21 L.Ed.2d 778 (1969)). And the Ninth Circuit has persuasively articulated the underlying rationality of an analogous statute that prohibited the shipment or transportation of firearms in interstate or foreign commerce by persons who have been convicted of crimes

---

**6.** *Cf. Lewis v. United States*, 445 U.S. 55, 65, 100 S.Ct. 915, 921, 63 L.Ed.2d 198 (1980) (firearm regulatory scheme in 18 U.S.C. App. § 1202(a)(1) (1976), which prohibits receipt, possession, or transportation of a firearm by a "felon," is consonant with the concept of equal protection embodied in the due process clause of the Fifth Amendment if there is some rational basis for the statutory discriminations made or if they have some relevance to the purpose for which the classification is made); *United States v. Harris*, 537 F.2d 563, 564 & n.2 (1st Cir. 1976) (rational relationship test appropriate in equal protection challenge to § 1202(a)(1) on grounds that it failed to distinguish between violent and nonviolent prior felonies); *United States v. Weatherford*, 471 F.2d 47, 51 (7th Cir. 1972) (statutory classification created by 18 U.S.C. § 922(g)(1) (1976), which prohibits shipping or transportation of firearms by persons who have been convicted of a serious crime, cannot be set aside on equal protection or due

process grounds "if any state of facts reasonably may be conceived to justify it"), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2144, 36 L.Ed.2d 695 (1973).

**7.** The *Craven* court made these remarks:

The Congressional findings and declaration of purpose . . . and the legislative history . . . amply demonstrate the nexus between violent criminal activity and the use of firearms. It was eminently reasonable for Congress to conclude that the indictment of an individual for a crime punishable by imprisonment for a term exceeding one year is so often indicative of a propensity for violence that the indictment classification of 18 U.S.C. § 922(h)(1) was justified in the public interest.

478 F.2d at 1339.

**8.** See note 1 *supra*.

punishable by imprisonment for more than one year. *United States v. Thoresen*, 428 F.2d 654, 660 (9th Cir. 1970).[9]

For substantially the reasons set out in these prior cases, we conclude that section 922(h)(1) bears a rational relationship to the goal Congress sought to promote; accordingly, Giles' first challenge to the constitutionality of that statute, based on grounds that it fails to discriminate between those convicted of violent and nonviolent crimes, must fail.

## III. DUE PROCESS AND ADEQUATE NOTICE OF THE PROSCRIBED CONDUCT

Whether Giles had actual, subjective knowledge that he was breaking the law is irrelevant, for it is clear from both the wording of section 922(h) and the interpretive gloss placed on that wording by many courts that knowledge is not an element of the crime defined by that section.[10] But in his second constitutional challenge to section 922(h)(1), Giles relies in part on *Lam-*

---

**9.** The *Thoresen* court was construing § 2(e) of the now-repealed Federal Firearms Act, formerly codified at 15 U.S.C. § 902(e). Section 2(e) was supplanted by 18 U.S.C. § 922(g)(1) (1976) as part of the 1968 legislation discussed in note 4 *supra*. The *Thoresen* court explained Congress' varying responses to the problems presented by widespread availability of firearms as follows:

> It was entirely appropriate for Congress to seek curtailment of nationwide crime and racketeering by closing the avenues of interstate commerce to those who would use them to promote such illegal activity. One obvious way of doing this was to prohibit those whose past records demonstrated a propensity to engage in such activity from transporting weapons or ammunition in interstate commerce. Congress originally thought persons having records of this kind would be sufficiently encompassed by limiting the proscription to persons who had been convicted of crimes of violence.

> Experience apparently demonstrated that the class so defined was not sufficiently inclusive. Congress apparently found that nationwide crime and racketeering were being promoted by the transportation of weapons and ammunition in interstate commerce by some convicts whose convictions did not involve violence. . . .

> At least by 1965, Congress solved this classification problem in what seems to us a very practicable and reasonable manner. All persons convicted of prior crimes were brought within the ambit of the proscription, but those who could show their past records were comparatively innocuous could gain exclusion [under another statutory provision]. Taking into account our conclusion that the proscription in question—prohibition from transporting weapons and ammunition in interstate commerce—involved no basic civil right and that one who has been convicted of a relatively innocuous crime had a way of escaping the classification, we think that a state of facts exists which justifies, and renders rational, the [statutory] classification.

428 F.2d at 660. The exemption provision to which the *Thoresen* court referred was § 10 of the Federal Firearms Act, formerly codified at 15 U.S.C. § 910; in the 1968 legislation that is discussed in note 4 *supra*, this provision was substantially re-enacted as 18 U.S.C. § 925(c) (1976). Section 925(c) provides, in pertinent part, as follows:

> A person who has been convicted of a crime punishable by imprisonment for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter or of the National Firearms Act) may make application to the Secretary [of the Treasury] for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, or possession of firearms and incurred by reason of such conviction, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

Presumably Giles could have, but did not, apply for an exemption under § 925(c) from the prohibitions of § 922(h)(1). The opportunity to obtain exemption under § 925(c) makes the *prohibitory scheme of § 922(h)(1) not merely rational, but fair as well.*

**10.** *E. g., United States v. Holmes*, 594 F.2d 1167, 1173 (8th Cir.), *cert. denied*, 444 U.S. 873, 100 S.Ct. 154, 62 L.Ed.2d 100 (1979); *United States v. Kilburn*, 596 F.2d 928, 934 (10th Cir. 1978), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979); *United States v. Williams*, 588 F.2d 92, 93 (4th Cir. 1978); *United States v. Haddad*, 558 F.2d 968, 974 (9th Cir. 1977). *Cf. United States v. Thrasher*, 569 F.2d 894, 895 (5th Cir.), *cert. denied*, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 137 (1978) (proof that defendant knew of the interstate nexus of firearm shipment when he received the weapon not essential to conviction under § 922(h)(1)); *United States v. Manley*, 563 F.2d 779, 779 (5th Cir. 1977) (same).

*bert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), in which the Supreme Court struck a Los Angeles ordinance that required felons to register with the police if they stayed in the city for more than five days, or entered the city on more than five occasions in a 30-day period. The Court noted that while "[t]he rule that 'ignorance of the law will not excuse' ... is deep in our law," *id.* at 228, 78 S.Ct. at 242 (quoting *Shevlin Carpenter Co. v. Minnesota,* 218 U.S. 57, 68, 30 S.Ct. 663, 666, 54 L.Ed. 930 (1910)), due process concepts of notice might limit the operation of that rule in some circumstances when "a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case." *Id.* Being in Los Angeles was not blameworthy per se, and the failure to register was quite unlike the commission or omission of an act under circumstances that "should alert the doer to the consequences of his deed." *Id.*

> [T]his appellant on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent. She could but suffer the consequences of the ordinance, namely, conviction with the imposition of heavy criminal penalties thereunder. We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand.

*Id.* at 229, 78 S.Ct. at 243.

The sweep of the *Lambert* case has been limited by subsequent decisions of the Supreme Court, lest it swallow the general rule that ignorance of the law is no excuse. *E. g., United States v. Freed,* 401 U.S. 601, 608–09, 91 S.Ct. 1112, 1117–18, 28 L.Ed.2d 356 (1971) (distinguishing *Lambert* in upholding statute making possession of unregistered hand grenades illegal, despite defendant's lack of *mens rea;* "[t]his is a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act"). And

Giles' situation, of course, is far different from that of Ms. Lambert, for he was directly confronted with accurate written notice of the conduct proscribed by the statute when he filled out and signed a Form 4473 as part of each firearm purchase.

■ Giles also cites us to the requirement set forth in such decisions as *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952), that a "criminal statute must be sufficiently definite to give notice of the required [or proscribed] conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation." But we do not agree that the statute is defective on grounds that it is not sufficiently definite to give adequate notice of the conduct it proscribes. In rejecting a similar challenge to the language of 18 U.S.C. App. § 1202(a)(1) (1976), the Supreme Court restated the appropriate standard for constitutional review:

> It is a fundamental tenet of due process that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). A criminal statute is therefore invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954).

*United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979). Elsewhere, the Supreme Court has noted that "there is no ambiguity in the words of § 922(h), and there is no justification for indulging in uneasy statutory construction." *Barrett v. United States,* 423 U.S. 212, 217, 96 S.Ct. 498, 501, 46 L.Ed.2d 45 (1976). It is hard to conceive of a description more clear than "any person ... who has been convicted in any court of ... a crime punishable by imprisonment for a term exceeding one year." We hold that the statute gives fair notice, understandable

by a person of ordinary intelligence, of the conduct it proscribes. Accordingly, Giles' second constitutional challenge to section 922(h)(1) must fail.

## IV.  CONCLUSION

We find no merit in either of Giles' challenges to the constitutionality of 18 U.S.C. § 922(h)(1) (1976). While we might sympathize with his protestations that he did not know his conduct was illegal, our sympathy is tempered by the fact that each Form 4473 plainly warned him that he could not legally buy a gun. His own testimony at trial demonstrated that he was capable of reading that warning. That he failed to heed it is his own fault. The judgment of the court below is

AFFIRMED.