RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0234p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 13-5714

*v.*

EDWARD L. YOUNG,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:12-cr-00045—Curtis L. Collier, Chief District Judge.

Argued:  March 13, 2014

Decided and Filed:  September 11, 2014

Before:  GRIFFIN, WHITE, and STRANCH, Circuit Judges.

─────────────

**COUNSEL**

**ARGUED:**  Douglas A. Berman, THE OHIO STATE UNIVERSITY MORITZ COLLEGE OF LAW, Columbus, Ohio, for Amicus Curiae.  Christopher T. Varner, EVANS HARRISON HACKETT PLLC, Chattanooga, Tennessee, for Appellant.  Christopher D. Poole, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.  **ON BRIEF:** Christopher T. Varner, EVANS HARRISON HACKETT PLLC, Chattanooga, Tennessee, for Appellant.  Christopher D. Poole, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.  Douglas A. Berman, THE OHIO STATE UNIVERSITY MORITZ COLLEGE OF LAW, Columbus, Ohio, Candace C. Crouse, PINALES STACHLER YOUNG BURRELL & CROUSE CO., L.P.A., Cincinnati, Ohio for Amicus Curiae.

The court delivered a PER CURIAM opinion.  STRANCH, J. (pp. 13–19), delivered a separate concurring opinion.

———————————

## OPINION

———————————

PER CURIAM. Edward Young received a mandatory fifteen-year prison sentence for the crime of possessing seven shotgun shells in a drawer. He came into possession of the shells while helping a neighbor sell her late husband's possessions. When he eventually discovered them, he did not realize that his legal disability against possessing firearms—resulting from felonies committed some twenty years earlier—extended to ammunition. *See* 18 U.S.C. § 922(g)(1). Under the Armed Career Criminal Act (ACCA), Young received a mandatory fifteen-year sentence.

Young now asks this court to conclude that the ACCA, as applied to him, is unconstitutional under the Eighth Amendment because the gravity of his offense is so low as compared to the harshness of his sentence, and unconstitutional under the Fifth Amendment because he lacked notice. Our precedent compels us to reject these claims and to affirm Young's sentence.

## I. BACKGROUND

In 2010 or 2011, Edward Young helped a neighbor sort and sell her late husband's possessions. When he discovered a box of seven shotgun shells in the collection, he stored the shells in a drawer where they would be safe from his four children. Because Young had previously been convicted of a number of felonies, all burglary-related offenses between 1990 and 1992, it was a crime for him to possess ammunition. 18 U.S.C. § 922(g)(1). He was unaware of this legal disability.

Police officers later showed up on Young's doorstep investigating recent burglaries at an auto repair shop and a storage building. During the consent search, officers found several items reported stolen, though it is unclear whether the items were associated with the recent burglaries. They also found the box of seven shotgun shells in a drawer, which Young readily admitted to possessing.

The government charged Young with a single count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1).  The statute carries a fifteen-year mandatory minimum sentence for anyone who, like Young, has at least three prior felony convictions. 18 U.S.C. § 924(e)(1).[1]

Young pleaded guilty to being a felon in possession of ammunition and mounted a constitutional challenge at sentencing.  According to him, a fifteen-year ACCA mandatory minimum sentence, as applied to him, would violate the Eighth Amendment because it is grossly disproportionate to the offense he committed, an offense of very low culpability or risk of harm. For support, he argued that his advisory Guidelines range, absent the ACCA and associated armed career criminal guideline, would have been only 10-16 months.  He also argued that the ACCA, as applied to him, would violate the Fifth Amendment Due Process Clause because he did not have fair notice of the prohibition against felons possessing ammunition.

The district court expressed concern about the fairness of the punishment but determined that it had no discretion in sentencing.  Young received the mandatory fifteen-year sentence, and now appeals.

## II.  ANALYSIS

We review these constitutional challenges to Young's sentence de novo.  *United States v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011).

### A.  Eighth Amendment

Young argues that the ACCA, as applied to him, violates the Eighth Amendment because it imposes on him a harsh sentence—one normally reserved for far more dangerous criminals—

---

[1]Tennessee authorities also filed state charges against Young for burglary, theft, vandalism, and contributing to the delinquency of a minor for events related to the burglary investigation.  These charges were pending in 2013 when Young was sentenced, but the government informs us that the charges were dismissed.  The government asks us to consider facts related to the state charges, including Young's alleged guilt and an alleged confession.  This information is not in the record, the district court made no findings as to whether Young committed the offenses or confessed to them, and an unsupported statement by a prosecutor is not a record fact.  As such, we will not consider the allegations.  *See United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting that "[a]ppellate courts generally will not consider facts outside the record developed before the district court" unless the fact is a proceeding in another court appropriate for judicial notice (internal quotation marks omitted)).  Nor will we consider the government's contention that state authorities asked it to prosecute Young because this is also not in the record.

for possessing seven shotgun shells in a drawer, a crime he describes as a mere technical violation of the statute. Comparing his crime to overtime parking, which could not constitutionally be punishable by life imprisonment, *see Rummel v. Estelle*, 445 U.S. 263, 288 (1980), he argues that a mandatory fifteen years is grossly disproportionate under the circumstances.

The government asks that we simply defer to the legislative mandate in the ACCA, which plainly sweeps Young's possession of shotgun shells into the same punishment category as the possession of bombs, missiles, or automatic weapons. *See* 18 U.S.C. §§ 921(a)(3)–(4), 922(g)(1), 924(e)(1). It is true that substantial deference is due to legislative sentencing schemes. *Ewing v. California*, 538 U.S. 11, 30 (2003) (noting that "rational legislative judgment[s] [are] entitled to deference"); *Harmelin v. Michigan*, 501 U.S. 957, 998–99, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (discussing the "primacy of the legislature" in making penological judgments); *Solem v. Helm*, 463 U.S. 277, 290 (1983) ("Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess . . . in sentencing convicted criminals."). Amicus counsel suggests that because these cases all involved a review of state sentences, and because the framers originally intended to limit the actions of Congress and not the states, less deference is due to Congress than to state legislatures. *See generally* Michael J. Zydney Mannheimer, *Cruel and Unusual Federal Punishments*, 98 Iowa L. Rev. 69, 69–131 (2012) (arguing that federal sentences should be reviewed by comparing them to state sentences rather than giving them the same deference given to states out of federalism concerns); John F. Stinneford, *Rethinking Proportionality Under the Cruel and Unusual Punishments Clause*, 97 Va. L. Rev. 899, 943–44 (2011) (explaining that the Bill of Rights was adopted to require the new federal government to recognize the fundamental common law rights of citizens, particularly relating to criminal rights). *Cf. Robinson v. California*, 370 U.S. 660, 666 (1962) (applying the Eighth Amendment to the states for the first time, through the Due Process Clause of the Fourteenth Amendment); *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 462 (1947) (assuming without deciding that the Eighth Amendment is applicable to the states through the Fourteenth Amendment). Whether amicus counsel is correct as to the *amount* of deference owed to Congress as compared to the states, it is correct that Congressional intent is not the end of the analysis of a constitutional claim. *See, e.g.,*

*Rummel*, 445 U.S. at 284 ("Texas is entitled to make its own judgments as to [criminal sentencing]," subject to the strictures of the Eighth Amendment). A legislative mandate does not trump the Constitution.

To determine whether a non-capital sentence falls outside the bounds of the Eighth Amendment's "evolving standards of decency," *Graham v. Florida*, 560 U.S. 48, 58 (2010) (internal quotation marks omitted), this court is instructed to use what has become known as the "narrow proportionality principle," *id.* at 59–60 (internal quotation marks omitted). Under this principle, "'punishment for crime should be graduated and proportioned to [the] offense,'" *id.* at 59 (quoting *Weems v. United States*, 217 U.S. 349, 367 (1910)), but the proportionality required "'forbids only extreme sentences that are "grossly disproportionate" to the crime,'" *id.* at 60 (quoting *Harmelin*, 501 U.S. at 997, 1000–01 (Kennedy, J., concurring in part and concurring in the judgment)).

The test is rarely met. *Cf. Ewing*, 538 U.S. at 22 ("[S]uccessful challenges to the proportionality of particular sentences should be exceedingly rare." (internal quotation marks omitted)). The Supreme Court has overturned only a small number of non-capital sentences on Eighth Amendment grounds. In 1910, the Court struck down a sentence of twelve years' imprisonment, in chains and at hard and painful labor, for falsifying a public document. *Weems*, 217 U.S. at 357, 365–67, 381. The Court considered the punishment degrading and harsh as compared to an offense that could be committed "though he gain nothing and injure nobody." *Id*. at 365–66. Not until over seventy years later did the Court hold unconstitutional another sentence: life without parole for passing a $100 bad check based on the defendant's multiple prior convictions. *Solem*, 463 U.S. at 296–97, 303. The Court observed that the sentence, generally reserved for far more serious offenses, was grossly disproportionate to the crime, "one of the most passive felonies a person could commit," involving no violence or threat of violence. *Id*. at 296–99, 303 (internal quotation marks omitted). In reaching this decision, the Court noted that the defendant's previous offenses triggering the state recidivism rule, including burglary, were also non-violent and minor in nature. *Id*. at 296–97. Finally, the Court has held that life without parole for juvenile non-homicide offenses is categorically grossly disproportionate. *Graham*, 560 U.S. at 74.

While this court has considered as-applied Eighth Amendment challenges to the ACCA mandatory minimum a number of times—mostly in cases involving the possession of firearms—we have never found sufficient disproportionality in these cases. *See, e.g., United States v. Banks*, 679 F.3d 505, 506, 507–08 (6th Cir. 2012) (rejecting categorical claim that ACCA fifteen-year minimum sentence for being a felon in possession of a firearm was unconstitutional where the defendant committed the prior offenses as a minor); *Moore*, 643 F.3d at 454–55 (rejecting an Eighth Amendment challenge to the ACCA minimum because the defendant's prior offenses were violent crimes and because he was seen with a gun while beating his girlfriend on the night of the arrest); *United States v. Johnson*, 22 F.3d 674, 677, 682–83 (6th Cir. 1994) (rejecting challenge to fifteen-year ACCA sentence for being a felon in possession of a firearm and ammunition); *United States v. Warren*, 973 F.2d 1304, 1305–06, 1311 (6th Cir. 1992) (holding that the fifteen-year sentence was not grossly disproportionate to the offense of being a felon in possession of a firearm). In an unpublished case, this court has also rejected, without proportionality review, an as-applied challenge where the defendant was convicted under the ACCA solely for possessing ammunition. *United States v. Walker*, 506 F. App'x 482, 489–90 (6th Cir. 2012). There, the defendant had been convicted for possessing thirteen 9 mm rounds of ammunition, the ammunition was discovered during a drug-related investigation, and he was simultaneously prosecuted on state drug charges. *Id.* at 483.

The government suggests that because this court has never concluded that a particular application of the ACCA mandatory minimum violated the Eighth Amendment, this court is bound to reach the same result. That is not necessarily so. A defendant's particular circumstances are relevant to an as-applied Eighth Amendment claim and could render a sentence unconstitutional. *Graham*, 560 U.S. at 59 ("[T]he Court considers all of the circumstances of the case to determine whether [a term-of-years] sentence is unconstitutionally excessive."); *see also Solem*, 463 U.S. at 291–94 (discussing the fact-specific, objective factors to be considered in an Eighth Amendment proportionality analysis); *Moore*, 643 F.3d at 454–55 (engaging in fact-specific proportionality review despite this court's prior holding that mental disability did not categorically render a mandatory sentence unconstitutional). "[N]o penalty is *per se* constitutional. . . . [A] single day in prison may be unconstitutional in some circumstances." *Solem*, 463 U.S. at 290 (internal citation omitted).

The Supreme Court has identified three "objective criteria" for assessing proportionality: the gravity of the offense as compared to the harshness of the penalty; the sentences imposed on others in the same jurisdiction; and the sentences imposed for the same offense in other jurisdictions. *Solem*, 463 U.S. at 292. But, in most cases, a gravity-versus-harshness analysis will answer the question; only if we reach an initial inference of gross disproportionality must we consider the other criteria. *Harmelin*, 501 U.S. at 1004–05; *Graham*, 560 U.S. at 60. The gravity of an offense depends heavily on the nature and circumstances of a particular case, including the harm or risk of harm, magnitude of the crime, degree of culpability, motive, and any other facts specific to the offense. *Solem*, 463 U.S. at 291, 293–94.

The harm caused, and even the risk of harm caused, was extremely low in Young's case. Indeed, under the facts as they were found by the district court, we cannot say that there was *any* risk of harm or violence inherent in Young's crime. *See Begay v. United States*, 553 U.S. 137, 146 (2008) (noting that the ACCA was designed to punish the special danger created when those most likely to pull the trigger possess a gun). Young possessed seven shotgun shells in a drawer, a crime that involved no violence and was committed "though he gain[ed] nothing and injure[d] nobody." *See Weems*, 217 U.S. at 365. He owned no compatible gun, and there is no evidence that he intended to use the shells in a crime, had ever used any weapon in any crime, or would provide the shells to someone who would use them in a crime. *Cf. Moore*, 643 F.3d at 455 (rejecting Eighth Amendment challenge, in part, because the defendant possessed a gun while beating his girlfriend). Young says that he intended to return the shells to the widowed neighbor, and no one has accused the widow of being a violent or dangerous criminal.

The magnitude of Young's crime was low, as was his culpability and motive. On the well-accepted scale of criminal culpability, ranging from negligent and reckless acts to malicious acts, Young's act of innocently acquiring and knowingly continuing to possess ammunition entails the lowest level of culpability that could have rendered him guilty of the crime. *See United States v. McCormick*, 517 F. App'x 411, 414 (6th Cir. 2013) ("Section 924(a)(2) . . . requires that any violation of section 922(g)(1) be 'knowing.'"); *see also Solem*, 463 U.S. at

293.  He acquired the shotgun shells passively, he kept them without any criminal motive, and his knowledge extended only to his possession and not to its illegality.**2**

Young's Achilles heel, however, is his recidivism.  As the Supreme Court recognized in *Ewing*, legislatures are permitted to impose more severe penalties on those who have not been deterred from criminal behavior by traditional punishments.  538 U.S. at 24–28.  In such cases, "we must place on the scales not only [the defendant's] current felony, but also his long history of felony recidivism." *Id*. at 29.  In other words, the gravity of the present offense is viewed in light of the defendant's previous offenses. *Id*.  For example, in *Ewing*, the defendant had previously been convicted of numerous felonies and misdemeanors, including robbery and residential burglaries; had committed many offenses while on probation for previous ones; and had served nine terms of imprisonment. *Id*. at 30.  This rendered the present offense of stealing $1,200 worth of merchandise sufficiently grave to warrant a sentence of 25 years to life under California's three-strikes law. *Id*. at 28, 30; *see also Moore*, 643 F.3d at 455 (considering defendant's prior offenses of aggravated burglary and distribution of crack cocaine in gravity analysis of firearm possession offense).  Of course, recidivism does not render *any* sentence constitutional; the offense still must be sufficiently grave in combination with the recidivism. *See Solem*, 463 U.S. at 279–80, 296–97, 303 (striking down a life sentence without the possibility of parole for felony of passing a bad check after committing six previous "relatively minor" felonies, including burglary).

Young's recidivism, resulting from numerous felony convictions roughly twenty years prior to his present offense, increases the gravity of his offense under *Ewing* and *Solem*.  These prior triggering offenses include four counts of burglary and seven counts of aggravated burglary. *See* Tenn. Code. Ann. § 39-14-403.  At least some of these crimes involved theft of weapons and ammunition.  These prior felonies were serious enough to qualify as violent felonies under the ACCA. *See* 18 U.S.C. § 924(e)(2)(B)(ii).  On the other hand, these offenses occurred long ago, with Young's most recent release from prison in 1996.  In the meantime, his only conviction for any crime was misdemeanor assault in 2005, for which he spent no time in

---

**2**Young argues that his lack of knowledge of illegality renders his crime under § 922(g)(1) one of strict liability.  We discuss this characterization in more detail under the Fifth Amendment analysis, but it is beside the point for the Eighth Amendment analysis because we agree that Young's culpability was low.

jail. But the remoteness is offset somewhat by the offense conduct listed in the PSR. We make no findings as to whether Young actually committed new burglaries in 2011, but it is relevant that the ammunition was found during a search for stolen tools and that several stolen items were found in Young's house.

Having reviewed the gravity of Young's offense, the court must now compare it to the length and other terms of the sentence, generally assuming that a longer sentence is harsher, to determine whether the sentence is grossly disproportionate. *Solem*, 463 U.S. at 294–95. There can be no question that a fifteen-year mandatory minimum sentence is harsh and severe. *See Moore*, 643 F.3d at 456 ("Fifteen years is by any measure a considerable amount of time."). Courts have found shorter sentences unconstitutional, but only in certain circumstances. For non-recidivist offenders, a twelve-year sentence in chains and hard labor was too harsh for falsifying public documents, *Weems*, 217 U.S. at 365–67, 382, but a mandatory life sentence was not too harsh for possessing a large amount of cocaine because the crime posed a serious health risk to society. *Harmelin*, 501 U.S. at 1002–03 (Kennedy, J., concurring in part and concurring in the judgment). For recidivist offenders, the line is different. A life sentence is too harsh for a recidivist felon who passed a bad check. *Solem*, 463 U.S. at 296, 303. But a twenty-five-year sentence is not too harsh for a recidivist felon who stole $1,200 worth of merchandise, *Ewing*, 538 U.S. at 28–31, and a fifteen-year sentence is not too harsh for a recidivist felon who possessed a firearm while beating his girlfriend, *Moore*, 643 F.3d at 455–56. While Young's fifteen-year sentence may be disproportionate to his offense in the abstract, our understanding of this precedent compels us to conclude that it is not *grossly* disproportionate when taking his recidivism into account.

Because Young's sentence is not grossly disproportionate to his crime under *Ewing* and *Solem*, we must ultimately reject his Eighth Amendment claim. *See, e.g., United States v. Nagy*, No. 13-4151, ___ F.3d ___, 2014 WL 3632362, at *5 (6th Cir. July 24, 2014) ("The striking and troublesome harshness [of a fifteen-year sentence for felon in possession of a firearm] . . . is but a particularly clear example of our sometimes difficult duty to apply the policy choices of Congress, rather than our own.").

**B. Fifth Amendment**

Because he lacked notice of the § 922(g)(1) bar against possession of ammunition by felons, Young claims that the ACCA is unconstitutional as applied to him under the Fifth Amendment rule that all citizens are entitled to be informed of what conduct the law prohibits. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972).

According to Young, notice cannot properly be imputed to him because felons and the general public lack knowledge of the ammunition prohibition. As evidence, he argues that generic judgment forms and plea colloquies notify new felons of the legal prohibition against possession of firearms but not ammunition. His judgment in the present case, for example, specifies that he "shall not possess a firearm, destructive device, or any other dangerous weapon" but makes no mention of ammunition. While sentencing him, the district court below repeated the same prohibition, as many district courts do, with no mention of the prohibition against ammunition.

Young also argues that notice cannot be imputed to him because he did not have specific intent to commit a criminal act. He refers to § 922(g) as a "strict liability offense" because the knowledge element extends to possession but not to the illegality of possession. *See, e.g., Bryan v. United States*, 524 U.S. 184, 187–88 (1998) (explaining that Congress added a "scienter requirement" for most unlawful acts under § 922); *McCormick*, 517 F. App'x at 414 ("Section 924(a)(2) . . . requires that any violation of section 922(g)(1) be 'knowing'" but the knowledge requirement does not extend to the illegality of possession); *United States v. Davis*, 27 F. App'x 592, 599–600 (6th Cir. 2001) (suggesting that the knowledge requirement refers to the element of possession, not to the legal disability).

Young's suggestion that general knowledge and specific criminal intent are necessary to impute notice to a criminal defendant is based on a misreading of case law. In *Papachristou*, one of Young's primary sources, the Supreme Court held that a vagrancy statute was unconstitutional as applied to specific individuals because the defendants were not likely to be alerted to the regulation because they did not have specific intent to commit unlawful acts, *and* because the ordinance was written in such an archaic manner that few would understand it. 405 U.S. at 162–

63. In other words, specific intent to commit a criminal act or actual knowledge can suffice for notice where the statute is unclear. *See, e.g., United States v. Caseer*, 399 F.3d 828, 839 (6th Cir. 2005) ("[T]he requirement of specific intent in this case mitigates any constitutional infirmity resulting from the vagueness of the [statute]."); *United States v. Baker*, 197 F.3d 211, 219 (6th Cir. 1999) (holding that even if the § 922(g)(8) firearms prohibition is obscure and vague, there was no notice violation because the defendant received adequate warning on his domestic violence protection orders). But unless the statute is so vague, technical, or obscure "that it threatens to ensnare individuals engaged in apparently innocent conduct," we apply the "centuries-old maxim that 'ignorance of the law is no excuse'" and presume notice despite a defendant's ignorance-in-fact. *Id*. at 218–19; *see also Papachristou*, 405 U.S. at 162–63; *United States v. Haire*, 89 F. App'x 551, 555–56 (6th Cir. 2004) (applying the presumption of notice to a felon convicted under Colorado's prohibition against possession of firearms); *United States v. Napier*, 233 F.3d 394, 397–99 (6th Cir. 2000) (holding that language in § 922(g)(8) gives sufficient notice of the prohibition against the possession of firearms by those subject to a domestic violence order); *United States v. Giles*, 640 F.2d 621, 627–29 (5th Cir. Unit A March 1981) (rejecting claim that firearms conviction was unconstitutional due to defendant's ignorance of the law because § 922(h) is clear on its face).

Young may have believed that his possession was innocent conduct, but he does not argue that the ACCA is too technical or obscure to impart legal notice had he read it. Nor could he, as the language in § 922(g) plainly states that "[i]t shall be unlawful for any person—(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [to] possess . . . any firearm or ammunition." It would be preferable for both state and federal courts to expressly inform felons of their legal disability; where a statute specifically targets a subclass of citizens, those citizens may be unlikely to learn of the prohibition from others. *Cf. Caseer*, 399 F.3d at 836 (keeping in mind "the common sense judgment that people do not review copies of every law passed." (internal quotation marks omitted)). Nonetheless, the Fifth Amendment notice requirement is satisfied by the statute, and we must reject Young's Fifth Amendment claim.

## III.  CONCLUSION

In conclusion, based on our binding precedent, we affirm Young's fifteen-year sentence.

---

**CONCURRENCE**

---

STRANCH, Circuit Judge, concurring.  Edward Young received a mandatory fifteen-year prison sentence for the crime of having in a drawer in his home seven shotgun shells belonging to his widowed neighbor.  Young was then caught in the dragnet of the Armed Career Criminal Act (ACCA) which imposes the same minimum sentence on a person who acquires shotgun shells passively as it does on a recently-released felon who possesses automatic weapons.  *See* 18 U.S.C. §§ 921(a)(3)(A), 922(g)(1), 924(e)(1).

The district court did not make the sentencing decision lightly.  Judge Collier compared Young's story to a Charles Dickens novel and noted that "[a] lot of people think these laws are unfair."  In the end, however, Judge Collier determined that binding precedent left him with no discretion in the case.  He sentenced Young to the mandatory fifteen-year sentence, suggested that "this is an issue the appellate courts and perhaps the Supreme Court will one day address" and encouraged Young to appeal.

Precedent compels us to conclude that this sentence does not violate the Constitution.  But holding that a sentence is constitutional does not make the sentence just.  As our former colleague representing the Judicial Conference described it, "[m]andatory minimum sentences mean one-size-fits-all injustice."  Statement on Behalf of the Judicial Conference of the United States from U.S. District Judge Paul Cassell before the House Judiciary Committee Subcommittee on Crime, Terrorism, and Homeland Security, 19 Fed. Sent. R. 344, 344–47 (2007) (declaring widespread and judicial opposition to the use of mandatory minimum sentencing).  This is not a newly minted or passing concern—since the early 1950s, the Judicial Conference has expressed its consistent and insistent opposition to mandatory minimum sentences.  *Id.*

Even if we put aside the well-recognized concerns calling into question the propriety and effectiveness of mandatory minimums as a whole, problems with the ACCA's over-inclusive provisions remain.  The concept behind mandatory minimum sentencing was to identify

dangerous felons likely to cause public harm and achieve the important goal of removing them from society.  For an individual not posing that level of dangerousness, district court judges most familiar with that particular defendant were to retain the discretion to impose a more appropriate sentence.  The disproportionately broad sweep of the ACCA betrays that core purpose and in doing so undercuts public confidence in our national commitment to a fair and equitable criminal justice system.

Throughout the ACCA's long history of enactments and revisions, "Congress focused its efforts on career offenders—those who commit a large number of fairly serious crimes . . . and who, because they possess weapons, present at least a potential threat of harm to persons." *See generally*, *Taylor v. United States*, 495 U.S. 575, 587–88 (1990) (discussing history of enactment and revisions of the ACCA); *accord Begay v. United States*, 553 U.S. 137, 146 (2008) (noting that the purpose of the ACCA is to focus on the "special danger" created when violent criminals or drug traffickers possess a gun).  It does this, in part, by creating mandatory sentences of at least fifteen years for those who violate the statute while committing or after having committed drug crimes or crimes of violence, indicating that Congress sought to remove the most dangerous individuals from society.  *See* 18 U.S.C. §§ 924 (e)(1).  But by including the mere possession of any ammunition, no matter how or why acquired, and by giving no regard to the remoteness of the triggering felonies, Congress has imposed an extreme sentence for what may well be innocent conduct, conduct posing no more risk of harm than possessing an antique gun.  *See* 18 U.S.C. § 921(a)(3) (excluding antique firearms from prohibited firearms); *United States v. Yirkovsky*, 259 F.3d 704, 705, 707 n.4 (8th Cir. 2001) (noting that the fifteen-year ACCA sentence was "extreme" as applied to a defendant convicted for possessing a single bullet that he found while removing carpet in payment for his rent).  Congress has imposed the same fifteen-year sentence on a man who acquired shotgun shells while helping a widow as that imposed on a recent offender who possesses a semi-automatic handgun with a silencer—a weapon synonymous with criminality.  *See* 18 U.S.C. §§ 921(a)(3)(C), 922(g)(1), 924(e)(1).

Two objective criteria—sentences imposed on others in the federal jurisdiction and sentences imposed for the same offense in other jurisdictions—as well as common sense, suggest that the ACCA dragnet is too broad.  *See Harmelin*, 501 U.S. at 1005.  Speaking on behalf of the

Judicial Conference, Judge Cassell provided a telling example of inequities generated by mandatory minimum sentences as compared to other sentences:

> Mandatory minimum sentences produce sentences that can only be described as bizarre. For example, recently I had to sentence a first-time offender, Mr. Weldon Angelos, to more than 55 years in prison for carrying (but not using or displaying) a gun at several marijuana deals. The sentence that Angelos received far exceeded what he would have received for committing such heinous crimes as aircraft hijacking, second degree murder, espionage, kidnapping, aggravated assault, and rape. Indeed, the very same day I sentenced Weldon Angelos, I gave a second-degree murderer 22 years in prison—the maximum suggested by the Sentencing Guidelines. It [is] irrational that Mr. Angelos will be spending 30 years in prison longer for carrying a gun to several marijuana deals than a defendant who murdered an elderly woman by hitting her over the head with a log.

19 Fed. Sent. R. at 344.

Regarding the second criterium, Young's mandatory minimum sentence under the ACCA finds no comparability to sentences imposed for the same offense in other jurisdictions. Amicus counsel provided statistics showing that states do not generally prohibit the possession of shotgun shells by felons or impose lengthy sentences for comparable offenses. I know of no state that would punish Young's crime of possession with a fifteen-year sentence. Only seventeen states prohibit the possession of ammunition by any particular category of non-intoxicated persons, and some of these prohibit only handgun ammunition. Law Center to Prevent Gun Violence, Ammunition Regulation Policy Summary, Summary of State Law at 3 (last updated Dec. 1, 2013), http://smartgunlaws.org/ammunition-regulation-policy-summary/. In Tennessee, the state of Young's arrest, his conduct is not even a crime because the corresponding state offense of being a felon in possession of a firearm, which is punishable "based on the seriousness of the offense and the potential for harm to others," does not extend to ammunition. Tenn. Code Ann. §§ 39-17-1307(b)(1)(A), ed. cmt., 39-11-106(a)(11). Of the states in the Sixth Circuit, only Michigan bars the possession of ammunition by felons, but this restriction expires five years after the date a prisoner is released from custody, as long as certain conditions are met. Mich. Comp. Laws § 750.224f(3)–(4). And there, a person convicted of being a felon in possession of ammunition is subject to only a five-year maximum sentence. Mich. Comp. Laws § 750.224f(6). The remaining Sixth Circuit states bar possession of

firearms—not ammunition—by felons, but each state either has a maximum sentence of five years or less or no statutorily mandated sentence for the crime.  *See* Ky. Rev. Stat. Ann. §§ 527.010, 527.040, 532.060(2)(c); Ohio Rev. Code Ann. §§ 2923.11(B)(1), 2923.13(A)(2) & (B), 2929.13.

In a general sense, federal sentences often far exceed state sentences for comparable conduct, a fact that may itself suggest disproportionality or unfairness.  *See* Michael A. Simons, *Prosecutorial Discretion and Prosecution Guidelines: A Case Study in Controlling Federalization*, 75 N.Y.U. L. Rev. 893, 916–17 (2000).  Considering the facts of the crime charged—that it was: committed with little culpability or risk of harm as compared to other crimes governed by the ACCA; consisting of behavior that many states do not criminalize and none would penalize so harshly; punishable by the same mandatory harshness as crimes posing a real risk to society—the inference of unfairness is unavoidable.  Such comparisons have been held to support Eighth Amendment violations.  *E.g.*, *Kennedy v. Louisiana*, 554 U.S. 407, 426 (2008) (finding it significant in Eighth Amendment analysis of a death penalty case that the defendant would not have received similar punishment "in 45 jurisdictions"); *Solem*, 463 U.S. at 303 (finding Eighth Amendment violation in part because the defendant had been treated more harshly than other criminals in the state who had committed more serious crimes and "more harshly than he would have been in any other jurisdiction").

The practical problems with—and unfairness of—the ACCA and mandatory minimum sentences in general have long been a concern of legal scholars and many in the judiciary.  *E.g.*, Paul J. Hofer, *Review of the U.S. Sentencing Commission's Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System*, 24 Fed. Sent. R. 193, 193 (2012) ("Mandatory minimum penalty statutes are particularly wasteful and unfair; they sweep too broadly and require excessively long sentences for over ten thousand offenders every year."); Paul G. Cassell and Erik Luna, *Sense and Sensibility in Mandatory Minimum Sentencing*, 23 Fed. Sent. R. 219, 219 (2011) (Mandatory minimums "conflict with the separation of powers doctrine," "implicate federalism concerns," "distort the processes and outcomes of the federal system," and "deprive judges of the flexibility to tailor punishment in individual cases . . . result[ing] in unduly harsh sentences."); Judge James S. Gwin, *Juror Sentiment on Just*

*Punishment: Do the Federal Sentencing Guidelines Reflect Community Values?*, 4 Harv. L. & Pol'y Rev. 173, 185-86 (2010) ("Congressional forays into the establishment of mandatory-minimum sentences . . . have only further diminished the connection between community sentiment and criminal punishment."); *U.S. Congress*, Families Against Mandatory Minimums, http://famm.org/projects/federal/us-congress/ (last visited Sept. 2, 2014) (highlighting efforts in Congress to repeal mandatory minimums).[1] *See also United States v. Young*, 960 F. Supp. 2d 881, 905–09 (N.D. Iowa 2013) (criticizing the role of the DOJ in determining which offenders to prosecute in a manner that would carry a statutory minimum).

While the means Congress has selected must be accepted, this case once again reveals the need for, at minimum, a more sensible and targeted ACCA, one that would continue to remove from society those most likely to cause harm while allowing less severe sentences for those who, like Young, do not pose that risk. The ACCA would benefit from practical measures such as a safety valve or graduated sentencing based on the kind of weapon or ammunition possessed, the indicia of risk, or the remoteness of past crimes. *E.g.*, The Justice Safety Valve Act of 2013, S. 619, 113th Congress (2013) (proposing to allow federal judges to impose sentences below statutory minimums to prevent injustice). Or Congress could simply give district court judges—who tend to have better knowledge of whether defendants truly pose a risk to society—the discretion to impose appropriate sentences. *See* Statement on Behalf of the Judicial Conference, 19 Fed. Sent. R. at 348–49 (highlighting various policy options for increasing judicial discretion in a fair and transparent manner); Judge Nancy Gertner, *Supporting Advisory Guidelines*, 3 Harv. L. & Pol'y Rev. 261, 262 (2009) (arguing that judicial discretion in sentencing "is not a spigot [that must] be turned on or off" but something that can be used with proper guidelines for consistency and transparency); *see also* Judge Nancy Gertner, *A Short History of American Sentencing: Too Little Law, Too Much Law, or Just Right*, 100 J. Crim. L. & Criminology 691, 694–704 (2010) (tracing sentencing trends and showing how, ironically, the Guidelines and mandatory minimums were originally part of an effort to *reduce* sentencing disparity). Such discretion would have made all the difference in this case, as Judge Collier made quite clear that

---

[1]It appears that many states have begun enacting sentencing reforms to reduce or remove mandatory minimum sentences. *See Recent State-Level Reforms to Mandatory Minimum Laws*, Families Against Mandatory Minimums, *available at* http://famm.org/wp-content/uploads/2013/08/FS-List-of-State-Reforms-2.25.pdf (last visited Sept. 2, 2014).

his factual findings showed Young not to be the kind of person who should be put away for fifteen years to protect society.

Society pays a great price when Congress over-criminalizes conduct. The cycle of poverty, criminality, and incarceration decimates communities, often "for no truly good law enforcement reason." Attorney General Eric Holder, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013), *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html. Prisons operate substantially over capacity, and the Department of Justice is forced to cut funding from other priorities to pay for prison growth. Rhonda McMillion, *Bipartisan push is on for sentencing reform*, A.B.A. J. (posted Feb. 1, 2014), *available at* http://www.abajournal.com/magazine/article/bipartisan_push_is_on_for_sentencing_reform/. Perhaps one of the greatest harms is that indiscriminate criminalization erodes the faith of our citizens in the federal criminal justice system. That loss of faith in the system entrusted with societal justice reverberates through our communities, damaging our families, our schools, and our workplaces—components that are necessary to an effective social structure in our nation.

Congress is well aware of the problem of over-criminalization; indeed, it has taken sufficient notice for the House Judiciary Committee to form a special task force to address the drastically expanding repertoire of federal crimes, many of which, like the present offense, include no criminal intent element. Judiciary Committee, Press Release, *House Judiciary Committee Reauthorizes Bipartisan Over-Criminalization Task Force* (posted Feb. 5, 2014), http://judiciary.house.gov/index.cfm/2014/2/house-judiciary-committee-reauthorizes-bipartisan-over-criminalization-task-force. The United States Sentencing Commission has set as a priority for its Sentencing Guidelines amendment cycle for May 1, 2015 the

> [c]ontinuation of its work with Congress and other interested parties on statutory mandatory minimum penalties to implement the recommendations set forth in the Commission's 2011 report to Congress, titled Mandatory Minimum Penalties in the Federal Criminal Justice System, including its recommendations regarding the severity and scope of mandatory minimum penalties, consideration of expanding the 'safety valve' at 18 U.S.C. § 3553(f), and elimination of the mandatory 'stacking' of penalties under 18 U.S.C. § 924(c), and to develop appropriate guideline amendments in response to any related legislation.

http://www.ussc.gov/sites/default/files/pdf/amendment-process/federal-register-notices/20140814_FR_Final_Priorities.pdf (last visited Sept. 2, 2014).

"[W]e judges have a right—a duty even—to express criticism of legislative judgments that require us to uphold results we think are wrong." *United States v. Ingram*, 721 F.3d 35, 43 n.9 (2d Cir. 2013) (Calabresi, J., concurring). I therefore join the continuous flood of voices expressing concern that the ACCA and other mandatory minimum laws are ineffective in achieving their purpose and damaging to our federal criminal justice system and our nation. I commend this case as another example of the need to reconsider the ACCA and mandatory sentencing in general.